Now we'll call our first case. Uh, I'm not sure quite how to pronounce it. I've been saying Furgess v. PA Dept of Corrections. I hope I got that right. All right. Mr. Misner. If you may please the court. I am John Misner. I'm with Mr. Caulfield. I represent Robert Fergus who is an inmate within the State Department of Corrections. I would like to reserve two minutes for rebuttal. Okay, that's done. Thank you, Mr. Misner. The lower court erred as a matter of law when it found that a shower was not a protected service, program, or activity under Title II of the Americans with Disabilities Act. Mr. Misner, which one of those do you contend it is? Which one what, Your Honor? Is the provision of showers a service? Is it a program? Is it an activity? I believe it could be considered all of those. We know that we don't have any definitions in the statute or in the regulations. We know that the court has guided us that those are to be broadly construed to be given an all-encompassing definition. So we see service has been defined as a facility providing the public with the use of something. And we believe that when they provide an area for the inmates to shower, that is a service being provided by the prison to the inmates of use of something. If we look at the word program, Your Honor, that has been defined as a plan of procedure or a scheduler system on which action may be taken toward a desired goal. Respectfully, I believe that showering is also a program because it's a plan of procedure toward an intended desired goal, and that is the cleanliness and the health of the inmates. Is that? Yeah, no, that's fine. Is there a, they've made the, taken a position on the opposing side that this is like sleeping or like eating. It's just a basic human activity. It's not a program. It's just the way human beings live. What's your response? Well, I think we need to look to what this court said in Yeski. And in Yeski, this court said that the ADA requires state prisons to provide assistance in toileting as a service, program, or activity. And it's hard for me in my mind to make much of a distinction between the use and necessity of a toilet. Well, toileting includes getting dressed. You know, you see pictures of French artists of Madame So-and-so at her toilet. She isn't sitting on the pot. She's sitting in front of a mirror, dressing her hair. And it's the whole, the whole encompassed activities from the toilet to the basin to the shower, that everything you do in the preparing of yourself to get ready to meet the world. Well, that is correct. And in a prison system, we know that there are scheduled procedures by which inmates are given showers. It's not a situation where like any one of us on a Saturday can decide when we want to take a shower. They're limited to three times a week at a particular time for a particular duration in a particular manner. Well, their assertion is this is not, was never meant to be covered by the ADA. This was something, you're talking about the incidents of prison life. And that falls under the Eighth Amendment. If you've got a cruel and unusual punishment claim, make it, bring it under 1983. But that wasn't ever the object of the ADA or the RA to try to address that. That's, you know, why are they wrong about that? They are wrong because the ADA specifically says that a disabled person may not be denied a service, a program, or activity because of their disability. Everybody in the RHU receives a shower. The only one that didn't receive a shower was Mr. Fergus. And Mr. Fergus did not receive a shower because of his disability. Now, how do we, how do we know that, Mr. Meiser? That's one of the questions I've got. On this record, how do we know that it was because of his disability or by reason of his disability? Is, is there something you're looking to in the record that tells you, is there, is there a note in the file? Is there a response to a grievance that says he can't do this because he's disabled? Well, we, well, yes, Your Honor. We have alleged that for a three-month period, he asked regularly for his shower. We say that he was denied that shower because there was no handicapped shower available. We further developed the medical department called over, said this, I'm well familiar, I think we're all well familiar with the allegations. The question, my question to you isn't what have you alleged? It's, is there anything in the record? Because you've asserted it was by reason of his disability. And I'm wondering, is there something in the record that supports the allegation? Or are you operating on the basis of inference here? Well, I. Which you're, you know, entitled to do, but. Yes. Is that, is there something else? We were at the pleading stage, Your Honor, and I believe that we aptly pleaded that the because of his disability, he repeatedly requests this. The superintendent said, you're supposed to have it. He had a handicapped shower when he was in general population. So what we're dealing with is in the RAQ, everyone else is getting a shower, but he isn't because he was handicapped and he was injured. It's, it's an, it's by operation of inference. You've got, you've got no direct evidence. You're asking us to infer it based on the things you've described and which are alleged in your complaint, right? No, that is correct, Your Honor. And I believe that if that had been the object of the motion to dismiss, we could have addressed it and possibly amplified on these facts. But this case was granted a motion to dismiss under 12B6 on the basis of that showering is not a program, activity, or service provided by the prison. What about the theory that your opponent has just brought up? Well, he was in the RAQ because he was being punished. So that was part of the punishment. Well, that's, that is their position. But the question is whether everyone else in the RAQ receives a shower. Every person who is not handicapped receives a shower. So that's not part of the punishment. That is not part of the punishment. And I would also make clear that the time this happened, Mr. Fergus was on administrative custody because there was not available bed in general population. To be clear, he was originally sent to the RAQ as a disciplinary matter. His time had been served, but there was not an available bed for him. So he remained there. As we point out in the DC ADM 802, there are, I believe, nine different reasons somebody could be put into the RAQ. Does it really matter what reason you're there if you're there? It doesn't matter, Your Honor. Well, could it matter if you're talking about this particular denial of a shower, whether somebody is particularly dangerous? I mean, you, you sort of lean on that stone, the other side does, I think on the Stoneminger case where the handicapped gentleman beat somebody to death with the footrest from the wheelchair. I mean, you could have a prisoner acknowledged to have a physical limitation and yet be so dangerous that you would say, no, this person can't be taken to a shower. They're just too dangerous, couldn't you? I believe there may be that situation, but that is not this situation, Your Honor. At the time, after his 90 days had expired, at that time, he was on AC status. Nobody told him the reason you can't... What is AC status? Administrative custody as opposed to disciplinary custody, Your Honor. Why doesn't his placement in the RHU and as Judge Jordan was asking you a bit earlier, why doesn't that point out that we're talking here about conditions of confinement? This is the existing condition of the RHU and we're talking about conditions of confinement as opposed to what we might traditionally envision as a program or an activity or a service that should be handled under the Eighth Amendment and not under the ADA or the RA. Well, because I believe it fits into the prima facie case of a claim under Title II. We have somebody who is disabled, who has been denied a service program or activity because of his disability. No one else in the RHU was denied a shower. Everybody else got a shower. And I believe that what the ADA says is something is available to someone in the public. It needs to be available to somebody when they're in custody. Some courts of appeals have distinguished between access to facilities with facility access being something different than the provision of service or program or activity and falling outside of Title II. Why isn't your claim one for access to a shower facility? Well, because I think we're following along what was said in yesterday, Your Honor, which said that the ADA required prisons to provide assistance in toileting. And I think that you could ask the same questions with respect to toileting except that the court has already said that that is something that they're required to do. And I would also point out that the appendix to the regulations established by the Department of Justice specifically state, it is essential that correction systems fulfill their non-discrimination and program access obligations by adequately addressing the needs of prisoners with disabilities. Right. We've read the regulation too. Go ahead. Can I take you back to the issue of the by reason of? Yes. Because those inferences that you were saying can be drawn from the complaints. You're not asserting that those are inferences of specific intent to discriminate, of discriminatory animus, right? No, I believe that there's a difference between establishing a prima facie case and then making sure you have sufficient evidence to establish compensatory damages. In order to establish a right to compensatory damages, we would need to establish deliberate indifference. Okay. I think that was made clear by this court in the Lower Marion case. So you have not, your brief, even in reply, doesn't engage the issue of deliberate indifference. For deliberate indifference, we'd need to see knowledge on the part of the institution, right, of unreasonable likelihood of a violation of this right. And then some failure to act in the face of that. Here, in terms of knowledge, we have even, as pleaded, officials in the prison saying that they were not aware when he was transferred to the RHU that he required these needs. And he doesn't file a grievance until March, very, toward the end of the three months. And once he does, it appears to be within days. He was then transferred very quickly to a cell that is handicapped accessible and told that they're making the necessary modifications in the shower. Why isn't that prompt response? But the shower they take him to, Your Honor, is not modified. If I could just point to a couple of things that I believe that we have pled, that lead to a finding of deliberate indifference, we begin with the fact that when he was transferred to SCI Albion, he was not put into a handicapped cell. He raised the issue with them. They acknowledged his handicap and put him into a handicapped cell. Okay, so they know of his disability at SCI Albion. Now, when he is taken to the RHU, not only does he ask every day, but they even have the medical staff from the prison, from SCI Albion, calling into the RHU, telling him. Now, if somebody in the medical staff tells you he is disabled, and you can observe that he is disabled because he can't walk without leg braces, and he has other difficulties that one can observe, and they don't do anything about that for 90 some days. And then when they say we're taking you to a shower that's been accommodated, that hasn't been accommodated. But when you say it hasn't been accommodated, if they have, I mean, their assertion is we did what we could under the circumstances. We provided him with the kind of a shower chair that is used by handicapped individuals. We, in this, within the strictures of the RHU, and having seen the grievance and understanding, we did what we could. How does that amount to deliberate indifference? You didn't take him to a handicapped accessible shower. There are handicapped accessible showers throughout SCI Albion. And I believe some of the things the court referred to are beyond the... Obligated either to make the construction, bring a construction crew and make the changes to a shower stall in the RHU, or to make arrangements to have guard transfers from one unit to another unit for purposes of the shower. That's the... And anything short of that is deliberate indifference. That is correct because they're aware of his situation and they don't address it. And we're not just talking about a day. So the provision of some things within the shower, a shower chair, assume that they said, look, we don't have grab bars installed yet, but we'll have a guard here to steady you if you need help. If they'd had somebody stand guard there, would that have been okay? Or would that have constituted deliberate indifference? I mean, so some... Hopefully, if their guard had been there, Your Honor, when the warm water exacerbated his condition, he could have provided him some assistance to avoid the fall. So I would respectfully submit that this isn't something that we should have been worrying about in 2015. We had the ADA back in 1991. They've had many, many years. And in fact, Your Honor, to be clear, throughout the state correctional institutions, there are handicapped showers. There are handicapped showers at SCI Albion. But as you said, the choices were, they could have taken him to the infirmary for a shower, or they could have taken him to general population for a shower. But what they couldn't do, in our view of the ADA, is deny to Mr. Fergus a shower that was provided to everybody that did not have a handicap. You made reference a moment ago to the leg braces. The leg braces? Yes. I just want to make sure we understand what significance you attach to those. But was that just to be able to impute knowledge? That's right. They were aware of his handicap. Remember, they had accommodated him in general population with a handicapped cell. He had access to handicapped showers. It was when he was moved to the R.H.U. that he was denied access to this shower. And you're not alleging that those should have been provided within the shower, given the security concerns? No, Your Honor. Just that it would be, they were aware. It's in his records. The medical department knew. We're talking about the SCI Albion, you know. And the question of whether what they did for him was enough or not, would you agree that that's a factual question? Yes. Yes. I mean, one of the challenges is that some of the questions that are being asked are a little bit beyond what I would know, having pled the complaint and not having done any discovery. But the fact remains is what I do know, is that everybody in the R.H.U. gets a shower, and Mr. Fergus did not solely because he was handicapped. And five circuits have ruled that providing a shower to an inmate is covered by the ADA. Our research, as of last night, has not revealed any circuit which is found to the contrary. Unless the court has any other questions, I see my time has expired and I don't want to overextend my welcome. All right. We'll have you back on rebuttal. Thank you, Mr. Meisner. Thank you for the opportunity. We'll hear from the, uh, the Commonwealth. Yes. My name is Kamal Alexander Marichli. I'm with the Office of the Attorney General of Pennsylvania. And I represent the institution in this case. How do you say your last name again? I'm sorry. Marichli, Your Honor. Mr. Marichli.  Thank you. Uh, the primary focus of our argument on appeal differs from the rationale that the district court had advanced. Although, of course, we continue to, uh, assert that rationale as well from a secondary standpoint. And that is . . . Let's start with, with the elements, okay? The district court, through the magistrate judge, laid out the four elements, uh, for a, um, for a claim and then said, uh, that, uh, those being, uh, that you've got a qualified individual with a disability that, uh, they're denied the opportunity to participate in a, uh, in a service program or activity and that's by reason of their disability. Those are the four steps. And, uh, the court says for purposes of the motion, you conceded the first two. Is that accurate? That's accurate, Your Honor. And you still do. So, we're here fighting just over whether showering is a program, service or activity and whether he was denied that by reason of his disability. That's correct. Two points? Okay. Yes. So, why don't we, why don't we then start with the question which is raised by Mr. Meisner's argument, uh, and just acknowledge he is denied a shower for three months, right?  That's an actual matter. Yes. By reason of his disability, uh, Mr. Meisner says everybody else is getting a shower in the RHU. Uh, Mr. Fergus is the only one who's not getting a shower in the RHU. So, you know that it can't be because he's being punished. There's nothing in the record that shows he's being punished. The only reason is because they don't have a handicap shower so he's being denied a shower. What, what's wrong with that line of reasoning? There's nothing wrong with that line of reasoning in terms of describing what occurred, but there is in terms of describing a violation of Title II of the ADA. What about Yeske? Yeske, uh, indicates that, uh, a very broad view must be applied to the concept of what is a program, service, or activity under Title II of the ADA and that, in fact, it's beyond dispute that the ADA covers prisons as a public entity. I want to follow up real quickly. If, if what we're fighting over is, is this a program, service, or activity and you're acknowledging that the only reason he didn't get a shower is because of his disability, then we can take Item 4 off the table too. We shouldn't be fighting about whether this is by reason of his disability because it sounds like you're acknowledging the fair inference from the record and the allegations is everybody else is getting a shower. He's the only one not getting a shower in the RHU. It's because there's no handicap accessible shower and it's by reason of his disability. There's nothing wrong with that logical step. We should stop talking about whether this is by reason of his disability and we should focus on what's at issue which is your assertion that this is not a service, uh, program or activity. I respectfully disagree that the simple fact that he was not getting a shower in the RHU because he was disabled and because they don't have handicap accessible showers in the RHU is enough to substantiate the prima facie demonstration in the pleading. That it's by reason of his disability? Correct. Then, then how is it not, right? Because. What's, what is in the record or what's in the, what is not in the pleading that would allow one to infer something other than that? We were supposed to draw every reasonable inference from the pleading. That's our standard on 12B6. Is it not a reasonable inference from the record that, I mean, I've just run through it. I won't run through it again, that the reason he's not getting a shower is because he's disabled and they don't have the facilities for it. The primary reason he's not getting a shower is because he's in the restricted housing unit. Everybody else in the RHU is getting one. That's the point. That's the point Mr. Meisner is pressing in the brief and at the podium. Everybody else is getting a shower in the RHU. So, it can't be the primary reason is because he's in the RHU. People being punished and being put in the RHU because of their punishment get showers. So, it's not part of punishment. No, it's not part of. And there's no particular reason that it should be part of Mr. Fergus' punishment, right? No, but he put himself in a situation where he happened not to have access to showers. The reason he was in that situation was not because... I think you just made your opponent's case for him. No, I haven't. I've been attempting to confront that case by saying he wasn't in a position. The fact that he's deprived of a shower does not necessarily provide a cause of It does in fact... What about Yeske then? Well... Yeske says the aspects of toileting. Taking showers is part of toileting. Are you saying it isn't? It is. It is. All right. So, what about Yeske? Yeske only applies when you aren't being disciplined or... Well, it's not just discipline that is responsible for a placement in the RHU. You can be in the RHU for a variety of reasons that have to do with the operational needs of the facility. In this case, at the time the accident happened, he had already served out his time. But one of the characteristics of the administrative custody policy is that it permits them to continue custody in the RHU until they get a bed in general population. And that's why he was there. That's... Again, that's... I take that to be Mr. Meissner's position. I take their position to be... We know it wasn't because he was being punished because any excuse for punishment was over. He was there because they didn't have a bed for him someplace else. And because they didn't have a bed for him someplace else, he stayed in the RHU. And the only reason he wasn't getting a shower was because they don't have handicapped facilities in the RHU. Why isn't that all by itself taking us and taking Factor 4 off the table? Because now it's clear that the reason he's not getting a shower is for no other reason than that the prison hasn't provided that opportunity in the RHU. The reason it hasn't taken Factor 4 off the table is that the reason he's in that situation is not by reason of disability. He was not... Okay, okay. But that... So what? That's the fourth element of the ADA claim. The ADA says you will provide these services. Yes, he has said to the Pennsylvania prison system, you will provide these services. And it doesn't say you will provide them just in one part of the prison. I think you look at this as a concept which extends across the prison. That if you are a disabled prisoner, having access to a disability shower is part of what the state has to provide you. And it's not giving them luxury accommodations. It's providing a basic service that the courts have said you have to provide to prisoners. Here is what I would suggest in light of the letter under Rule 20HA that I provided a couple of days ago citing this court's opinion in Haverly v. Troxell which was authored for the court by Judge Sherwood. And it draws... It reaches the conclusion that Title II of the ADA can be approached in two ways. One is the way in which Mr. Meisner has sought to plead this case on behalf of his client. The other way is under the catch-all provision of Title II of the ADA which reads subject to discrimination as a separate way of proving it, violation of the ADA, from by reason of disability. Now what we're trying to say here is, and what I think the questions from the bench have indicated, is you're trying to say that in fact he has a Title II of the ADA violation because he's disabled and they didn't make reasonable accommodation for him. End of story. No, there's a third factor. What I'm trying to do is make sure we're talking about what seems to be actually in dispute. I'm having difficulty with your arguing the fourth factor because it seems abundantly clear he was denied the shower because of his disability because everybody else was getting it. So I'm not sure why you're hanging on to that one. But let's talk about the by reason that the program, activity, or service, which is what a lot of your brief is about. And you cite to... And the district court cited to Western District of Pennsylvania cases saying it's not covered. But that does lead us to the question Judge Roth has asked repeatedly, which is, doesn't YESGI, and using the words toileting is covered by the ADA and the RA, doesn't that lay that to rest? Doesn't that, in fact, tell us that indeed the United States of America, whose job it is to enforce this and which the Department of Justice has written a whole bunch of regulations, has filed an amicus brief saying, oh yes, it is. So in the face of YESGI and an amicus brief from the United States government citing DOJ regulations, how is it that the commonwealth can come in and say, yeah, but it's not really. It's not really a program, service, or activity covered by the ADA or the RA. Well, the reason we advanced that position in the lower court is that we had cases from the lower court that, in fact, took the view that you mentioned in your earlier question. Those cases don't take account of Supreme Court case law, including United States versus Georgia that identifies hygiene as one of those services or activities or programs that would be covered under the ADA. As you no doubt recall, there's a footnote three in the Fergus opinion by now Judge Paradise Baxter says that can be ignored because it's mere dicta. There's some dictum that is a little more powerful than other dictum. And I'd say the Georgia dictum gives me a pretty good idea of what the Supreme Court would say if that issue came before them on the merits. And if we're looking at- Your Honor, it's supported by a great number of opinions of the United States Supreme Court, courts of appeal that say there's dicta and there's dicta from the United States Supreme Court. If we're looking at that dicta relative to- Dictum. I studied Latin for many years. Well, we have plural because we're talking about both Yeski and Georgia. But if we're comparing that to what the district court relied on here, that is three Western district decisions, two of which are unpublished, and all of which were relying on Judge Posner's analysis in Bryan. Which he does not think extends to Showery. But the Supreme Court has since abrogated that reasoning with Yeski and Georgia. And the Seventh Circuit has explicitly taken the position that showering constitutes a covered service program or activity in Jaros. Your Honor, I don't mean to interrupt. I'm sorry. We had the Seventh Circuit and every other circuit that's looked at this, the access to showers, the provision of showers is covered under Title II. Why should we be breaking off from that and creating a circuit split given Supreme Court authority and the unanimous opinion of the other circuits? The fact that the response to that is most sensibly why indeed is why I structured my brief the way I did and why I seek to rely on an alternative way of looking at this case, which assumes that it is a program or service. And that is the by reason of disability. Well, we can come back to that, but you haven't conceded that it's a service. No. And you also in your brief, you don't engage at all the regulations. That are in play here. Those regulations are explicit that prisons do need to provide showers and to do so across the full range of different security levels. So, which would include, of course, the RHU. We are to give those regulations controlling weight unless they're arbitrary or capricious or contrary to statute. Are you arguing that the regulations are in some way contrary to statute? Or why shouldn't we be giving them controlling weight? Well, may I respond? Pardon me. At least great difference. Yeah. First, my learned opponent has written a good brief and made his points well, but he never argued that the regulation was a support for this particular issue. No, but the United States of America in an amicus brief has and we've got the argument in front of us. So the point that Judge Krauss is getting you to respond to, you need to respond to, why should we not, why would we not give the regulations controlling weight? And if they did, doesn't that knock prong three out from under you? I think these regulations would be subject to Skidmore deference rather than Chevron deference. And that is a matter in which you argue whether or not it's plausible that these regulations are in fact consistent with the SEC. You just read it. They say 28 CFR 0.35. It is essential that correction systems fulfill their non-discrimination and program access obligations by adequately addressing the needs of prisoners with disabilities, which include, but are not limited to accessible toilet and shower facilities, etc. I mean, that's, you know, Skidmore, Chevron, I don't care what kind of label you want to hang on it. Why wouldn't we look at that? Why wouldn't the Department of Corrections look at that and say, we got to give a handicapped accessible shower? Your Honor, if we were, perhaps you could suggest that the motion to dismiss was not the best way to deal with this case, that evidence and fact-finding in connection with fact-finding would paint a very different picture. That's outside the record. Here's the one. Well, maybe we ought to send it back and expand the record a little bit. That is. Are you opposed to that? I, at this point, I am. Because I'm trying to... Is that what you got to do? I'm defending a decision of the United States District Court judge. It is not, I think, correct for the Office of Attorney General or its deputies to go around making decisions about disputed points of law. That is, in fact, the prerogative of this court. I think we've brought up... If I had... I believe we have brought up some points of law today that are not disputed that do not promote your position. We do not have a case in the Western District of Pennsylvania that specifically says showering is a program of activity. And are you limited to looking at Western District of Pennsylvania cases? No, but we advocated them in front of the district court judge and we invited her to make a ruling based on those cases. Right. And then, in fact, she did. And the issue then is, are these outliers, admittedly outliers, are these outliers capable of being reconciled with the jurisprudence on Title II of the ADA or not? And that is the question before you today. Okay. Insofar as that is concerned. My other point... I understand. Okay. What is your other point? This is my last point. It's one that I'm trying to make as consistent with my brief. And that is the Stromanter case, which you referred to, Your Honor, in your questioning, and Brown, Abdul Brown versus the Pennsylvania Department of Corrections do take the position that when, for whatever reason, the Department of Corrections places a disabled prisoner in restrictive housing, that is another, that is the reason that whatever problems he suffers as a result of his disability occurs. And that is not by reason of disability. I'm not sure that Stromanter gets you where you think it does. But in any event, that's a Seventh Circuit case. And the Seventh Circuit has since then in jurors said, in language kind of clear as a bell, showers, that's part of the ADA. You got to make that available, right? I mean, it's hard to say Stromanter controls over jurors, isn't it? Stromanter doesn't. It's not a published opinion. Right. But it's the theory that I'm attempting to advance. Okay. The other point is, to the extent the court is uncomfortable with this situation and believes redress is required, the problem is it's an Eighth Amendment case. Yeah, well, we're not sure that it's, quote, redress is required, unquote. What I think you might be getting from these questions is it looks, it appears that there's a problem with your, the legal theory you advanced to the district court and that the district court accepted. And part of that problem is in the assertion that there had to be discriminatory animus. Our standard is deliberate indifference, is it not? Yes. I have discussed that in my brief. All right. And I tried to argue this is negligence. Okay. Well, thank you very much, Mr. Meisner. Thank you, Your Honor. I appreciate your time and patience. Okay. Mr. Meisner, your rebuttal. Yes, unless the court has questions, I think I covered the points I intended to, and I would rest on that unless there's a question. No. Good move, Mr. Meisner. Thank you, Your Honor. All right.